IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAWN DOWNING, *

Plaintiff, *

v. * Civil Action No. RDB-12-1047

BALTIMORE CITY BOARD *
OF SCHOOL COMMISSIONERS,
*
Defendant.

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Dawn Downing ("Plaintiff" of "Dr. Downing") has brought this employment discrimination action against Defendant Baltimore City Board of School Commissioners ("Defendant" or "the Board") alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA")[1] (Count I), Title VII of the Civil Rights Act of 1964 ("Title VII")[2] (Count II), and Maryland's Fair Employment Practices Act ("FEPA")[3] (Count III). Pending before this Court is the Board's Motion to Dismiss (ECF No. 7) Counts I and III of Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[4] Specifically, the Board claims that Counts I and III are barred by Eleventh Amendment sovereign immunity.[5] This Court has reviewed the record and finds that no hearing is necessary. See Local Rule 105.6 (D. Md. 2011). For the following reasons, Defendant's Motion to Dismiss (ECF No. 7) is

---

[1] 29 U.S.C. §§ 621 *et seq.*
[2] 29 U.S.C. §§ 2000e *et seq.*
[3] Md. Code Ann., State Gov't §§ 20-601 *et seq.*
[4] In its Motion, the Board requests the dismissal of Counts II and III, but this appears to be a mistake, as its arguments focus entirely on Plaintiff's ADEA (Count I) and FEPA (Count III) claims without addressing Plaintiff's Title VII claim (Count II). See Def.'s Mem. Supp. Mot. Dismiss 2, ECF No. 8.
[5] U.S. Const. amend. XI

GRANTED. Plaintiff's claims in Counts I and III are DISMISSED WITHOUT PREJUDICE and Plaintiff shall have leave to amend those counts.

BACKGROUND

Dr. Downing is a highly educated, 50-year-old, African American woman. Pl.'s Compl. ¶¶ 7-8, ECF No. 1. She holds a Bachelor's Degree in Office/Business Education from Virginia Common Wealth University, a Master's Degree in Administration and Supervision/Adult and Continuing Education from Coppin State College, and a Doctorate Degree in Urban Education Leadership from Nova Southeastern University. *Id.* In addition, Dr. Downing also has Administrator I and II certifications.[6] *Id.* ¶ 10.

Dr. Downing began working with Baltimore City Public Schools in 1998, occupying administrative positions from the outset. *Id.* ¶ 9. Dr. Downing worked in different capacities from 1998 through 2008, serving as the Principal of Eager Street Academy from 1998–2004, the Director of High School reform from 2004–2006, and the Principal of an Alternative Elementary School from 2006–2008. *Id.* However, in 2008, Dr. Downing became aware that a reorganization of the school system was leading to the closing of her school. *Id.* ¶ 11. Dr. Downing was then given two choices – accept a demotion, or continue working in her current capacity and start looking for a new position. *Id.*

From August 2008 through July 2009, Dr. Downing applied for numerous positions, for all of which she claims she was qualified, but was unable to secure employment. *Id.* ¶¶ 12-22. Among the administrative and director positions for which Dr. Downing applied were the Director of the Office of Student Placement, the Director of the New Initiative Office, and the

[6] In Maryland, certified teachers and other licensed professionals who already possess a master's degree and work in schools may obtain the Administrator I and II certifications if they wish to become educational leaders and administrators at the local and state levels. *See* Md. State Dep't of Educ. website at www.marylandpublicschools.org.

Coordinator of Student Placement. *Id.* ¶¶ 12, 16, 19. Additionally, Dr. Downing applied to be the Principal of numerous schools, including Baltimore Community High School, Doris M. Johnson High School, Paquin Program School, and Forest Park High School. *Id.* ¶¶ 15, 17, 20, 21. Dr. Downing was not hired for any of these positions despite previously serving as an Administrator and Director, and her temporary supervisor submitting a letter of recommendation highlighting her accomplishments in those positions. *Id.* ¶ 13. Instead, Dr. Downing claims the Defendant hired less qualified individuals, such as Tom DeWire, a 28-year-old Caucasian male with no administrative background. *Id.* ¶ 12.

Similarly, Dr. Downing contends other employees, specifically those less qualified, younger, Caucasian, and/or male, were automatically reassigned, thereby bypassing the hiring process altogether. *See Id.* ¶¶ 14a-d (listing employees whom the Board automatically reassigned after their respective schools closed). During this application process, Dr. Downing was serving as a teacher rather than as an administrator, which negatively affected her salary and leave accrual. *Id.* ¶ 22.

Dr. Downing alleges that the Board neither hired her for the aforementioned jobs, nor assigned her to a new school, because of her age, race, and/or gender. *Id.* ¶ 23. After exhausting her administrative remedies before the Maryland Commission on Human Relations (now the Maryland Commission on Civil Rights), the Equal Employment Opportunity Commission, and the Civil Rights Division of the U.S. Department of Justice, and receiving notice of her right to sue, Dr. Downing filed the instant Complaint. *Id.* ¶ 5. In the Complaint, Dr. Downing alleges the Board engaged in discriminatory employment practices in violation of the Age Discrimination in Employment Act of 1967[7] (Count I), Title VII of the Civil Rights Act of 1964[8]

---

[7] 29 U.S.C. §§ 621 *et seq.*
[8] 29 U.S.C. §§ 2000e *et seq.*

(Count II), and Maryland's Fair Employment Practices Act[9] (Count III). *Id.* ¶¶ 8-13. For each of these three Counts, Plaintiff seeks $1,000,000 in compensatory damages, $2,000,000 in punitive damages, reasonable attorney fees, and such other relief as this Court deems necessary and proper. *Id.* ¶¶ 29D-G, 36D-G, 42D-G.

STANDARD OF REVIEW

Defendant moves this Court to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In ruling on such a motion, this Court is guided by the Supreme Court's instructions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) which "require complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's *Twombly* decision articulated "[t]wo working principles" courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Id.* at 679.

[9] Md. Code Ann., State Gov't §§ 20-601 *et seq.*

However, since Defendant's motion deals more specifically with sovereign immunity under the Eleventh Amendment, this type of motion is properly made pursuant to Rule 12(b)(1) of the Rules of Civil Procedure. A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). Under Rule 12(b)(1), a party may advance a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject-matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citations omitted). With respect to a facial challenge, the court will grant a motion to dismiss for lack of subject-matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F.Supp.2d at 799(citations omitted). Where a challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject-matter jurisdiction." *Kerns*, 585 F.3d at 192. In this case, there is a facial challenge to the Complaint, as the Government has aptly noted that this Court lacks subject-matter jurisdiction over Plaintiff's claims against the Government because the United States has not waived its sovereign immunity. The plaintiff carries the burden of establishing subject-matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

## ANALYSIS

In its Motion to Dismiss, Defendant the Baltimore City Board of School Commissioners ("Defendant" or "the Board") argues that it is an arm of the state entitled to Eleventh Amendment immunity from Plaintiff Dawn Downing's ("Plaintiff" or "Dr. Downing") claims under the Age Discrimination in Employment Act ("ADEA") and the Maryland Fair Employment Practices Act ("FEPA") as set forth in Counts I and III respectively. Additionally,

because Dr. Downing seeks damages greater than $100,000, the Board maintains that the State of Maryland has not waived the Board's Eleventh Amendment immunity. *Id.* at 8-10. Dr. Downing contends, however, that the Board is not an arm of the state and therefore not subject to Eleventh Amendment immunity. Alternatively, Dr. Downing argues that where this Court finds the Board to be a state agency, the State of Maryland has waived the Board's Eleventh Amendment immunity for claims up to $100,000 and therefore asks this Court to exercise its liberal authority to grant leave to amend the Complaint. Additionally, because the Board's Motion does not challenge Plaintiff’s Title VII claim in Count II, Dr. Downing maintains that even if this Court were to grant Defendant's Motion entirely, this case should still proceed on Count II.

The Eleventh Amendment states, in part, that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. Amend. XI. The United States Supreme Court "has drawn upon principles of sovereign immunity to construe the Amendment to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990) (internal quotation marks omitted). This immunity "also extends to state agents and state instrumentalities." *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248 (4th Cir. 2012). However, sovereign immunity is not an absolute bar to a suit as a state may waive its immunity and consent to suit in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). These last two points– that sovereign immunity is applicable to state agencies and that a state may waive their immunity in federal court– are at the heart of Dr. Downing's opposition to the Board's Motion and this Court will address these issues in turn.

## I. The Board is a State Agency Entitled to Eleventh Amendment Immunity

In Maryland, it is well established that the relationship between local boards of education and the State of Maryland is sufficiently close to make the boards an arm of the state. *See, e.g., Lee-Thomas*, 666 F.3d at 248 n.5 (concluding county school boards are an arm of the state entitled to invoke Eleventh Amendment immunity because "the state exercises a significant degree of control over boards of education" and "Maryland law treats them as instrumentalities of the State."); *Lewis v. Bd. of Educ. of Talbot Cnty.*, 262 F. Supp. 2d 608, 613-14 (D. Md. 2003) (weighing the three factors set forth in *Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 223 (4th Cir. 2001) to determine that school boards in Maryland are entitled to sovereign immunity); *Bd. of Educ. of Balt. Cnty. v. Zimmer-Rubert*, 973 A.2d 233, 236-37 (Md. 2009) (compiling cases). Additionally, the Maryland Court of Special Appeals concluded with respect to the Baltimore City Board of School Commissioners that "there is no doubt that the Board is properly regarded as a State agency." *Balt. City Bd. of Sch. Comm'rs v. Koba Inst., Inc.*, 5 A.3d 60, 66 n.12 (Md. App. 2010). The court further reasoned that the Board is undoubtedly a state agency because it bears all of the key indicia – state law creates and controls the Board, it serves a state purpose, and the Mayor and Governor appoint the Board members from a list of individuals submitted by the State Board of Education. *Id.* In applying this principle, this Court also held that the Baltimore City Board of School Commissioners is an arm of the state. *See N.T. v. Balt. City Bd. of Sch. Comm'rs*, JKB-11-356, 2012 WL 3028371, at *2 (D. Md. July 24, 2012) (stating the Baltimore City Board of School Commissioners is "a local board of education that, under Maryland law, is considered a state agency").[10] Accordingly, the Baltimore City Board of School Commissioners is initially entitled to Eleventh Amendment immunity.

[10] In *N.T. v. Balt. City Bd. of Sch. Comm'rs*, while this Court found that the Board was a state agency, it was not entitled to Eleventh Amendment immunity because Congress explicitly abrogated state immunity for Title II of the

**II. The State Has Waived the Board's Immunity For Claims Up to $100,000.**

Because the Board is considered a state agency under Maryland law, the critical question becomes whether Section 5–518(c) of the Courts and Judicial Proceedings Article of the Maryland Code waives the Board's immunity.[11] As the Supreme Court has stressed, "[t]he test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985). Under this test, "the Court has admonished the lower federal courts to identify a waiver of Eleventh Amendment immunity in a state statute only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Lee-Thomas*, 666 F.3d at 250 (quoting *Atascadero*, 473 U.S. at 240) (internal quotations omitted). However, "when a state's highest court has applied a federal law and determined that a state statute effects a waiver of Eleventh Amendment immunity, the federal courts must accord deference to that state court decision." *Lee-Thomas*, 666 F.3d at 248. In fact, the decision of the state's highest court is controlling even when the statute, on its face, does not appear to pass the stringent test. *Id.* Applying these principles, the Fourth Circuit explicitly stated that a district court should defer to the Maryland Court of Appeals' determination in *Bd. of Educ. of Balt. Cnty. v. Zimmer-Rubert*, 973 A.2d 233, 242 (Md. 2009) concerning whether section 5-518(c) effects a waiver of a school board's Eleventh Amendment immunity. *Lee-Thomas*, 666 F.3d at 254.

In *Zimmer-Rubert*, the Maryland Court of Appeals stated that the issue "is essentially one of statutory interpretation," and concluded that Section 5-518(c) waives a local school board's

---

Americans with Disabilities Act, 42 U.S.C. § 12132, which was the basis for the plaintiff's complaint. 2012 WL 3028371, at *2.

[11] The immunity provision provides that "[a] county board of education may not raise the defense of sovereign immunity to any claim of $100,000 or less." MD. CODE ANN., CTS. & JUD. PROC. § 5-518(c).

governmental immunity, "meaning its general sovereign immunity and the immunity guaranteed by the Eleventh Amendment to the United States Constitution," for all claims up to $100,000. 973 A.2d at 235. The court reasoned that the "plain language" of Section 5-518(c) serves as a "broad and unambiguous" waiver of the school board's general sovereign immunity and its Eleventh Amendment immunity. *Id.* at 242. The Court of Appeals analyzed the legislative history of the immunity provision and determined that the words "any claim" in § 5-518(c) means "*all* claims," which "cannot reasonably be read to exclude certain categories of claims." *Id.* Additionally, the court noted that the immunity provision, as originally drafted, required school boards to carry liability insurance "for personal injury claims." *Id.* This language, however, "was stricken in favor of language requiring '*comprehensive* liability insurance.'" *Id.* The Court of Appeals concluded that the legislature's alteration "exemplifies the intent of the General Assembly to apply § 5-518(c) to all claims, including those for personal injury and alleged *employment law violations*." *Zimmer-Rubbert*, 973 A.2d at 242. (emphasis added).

Similarly, the Court of Special Appeals reasoned the immunity provision is a waiver of the defense of Eleventh Amendment immunity "as the words 'any claim' in § 5-518(c) encompass a claim brought in either state or federal court." *Id.* The court contrasted § 5-518(c) with another Maryland statute, which waived the State's immunity to any claim brought "in a court in this State," and concluded that, had the General Assembly intended to preserve Eleventh Amendment protection in this instance, it would have included similar words of limitation. *Id.* at 242-43. For these reasons, the court concluded that the immunity provision waives a school board's "governmental immunity, including its Eleventh Amendment immunity, for *all* claims in the amount of $100,000 or less." *Id.* at 243 (emphasis added).

Therefore, Section 5-108(c) of the Courts and Judicial Proceedings Article of the Maryland Code waives the Board's immunity for both the alleged Age Discrimination and Employment Act and Maryland Fair Employment Practices Act violations for claims not to exceed $100,000 in damages. *Lee-Thomas*, 666 F.3d at 255. While the court in *Zimmer-Rubert* only discussed claims under the ADEA, the court explicitly stated that the State of Maryland intended § 5-518(c) to cover "all claims," including "employment law violations." 973 A.2d at 242-43. Therefore, this Court finds the immunity provision to encompass Plaintiff's FEPA claim as well.

Accordingly, the Board's Motion to Dismiss is GRANTED because Dr. Downing's claimed damages in Counts I and III exceed $100,000. Plaintiff's claims in Counts I and III are DISMISSED WITHOUT PREJUDICE. Plaintiff shall have leave to amend these claims consistent with this Court's ruling.

## CONCLUSION

For the reasons stated above, Defendant Baltimore City Board of School Commissioners' Motion to Dismiss (ECF No. 7) is GRANTED. Plaintiff's claims in Counts I and III are DISMISSED WITHOUT PREJUDICE and Plaintiff shall have leave to amend.

A separate Order follows.

Dated: December 18, 2012.

/s/__________________________
Richard D. Bennett
United States District Judge