IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAWN DOWNING, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-12-1047 |
| BALTIMORE CITY BOARD OF SCHOOL COMMISSIONERS | * | |
| | * | |
| Defendant. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Dawn Downing ("Dr. Downing" or "Plaintiff") brings this employment discrimination action against Defendant Baltimore City Board of School Commissioners ("the Board" or "Defendant"), alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and Maryland's Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't §§ 20-601 *et seq.* Pending before this Court is Defendant's Motion for Summary Judgment (ECF No. 51). The parties' submissions have been reviewed and no hearing is necessary.[1] *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendant Baltimore City Board of School Commissioners' Motion for Summary Judgment (ECF No. 51) is GRANTED IN PART and DENIED IN PART.

---

[1] A hearing was scheduled for March 5, 2015, but cancelled when this Court closed due to a snowstorm. The parties could not agree upon an immediate rescheduling. Accordingly, this Court notified counsel that it would rule on the submissions of the parties.

1

Specifically, summary judgment is granted on Dr. Downing's claims of race and age discrimination, but denied with respect to her claim of gender discrimination.[2] That claim shall proceed to trial under both Title VII and the Maryland Fair Employment Practices Act.

## BACKGROUND

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). While there are some disputes of fact, particularly with respect to the gender discrimination claim, the parties essentially agree to the following account of Dr. Downing's history with the Board.

Dr. Downing is a highly educated, fifty-three-year-old African-American woman. Pl.'s Compl. ¶¶ 7-8, ECF No. 1; Mem. in Supp. of Def.'s Mot. for Summ. J., 7, ECF No. 51-1. She holds a bachelor's degree in business from Virginia Commonwealth University, a master's degree in administration and supervision of adult/continuing education from Coppin State University, and a doctorate in education from Nova Southeastern University. Mem. in Supp. of Def.'s Mot. for Summ. J., at 7. Dr. Downing also holds Administrator I

---

[2] This Court notes that the submissions of the parties did not differentiate the analysis under Title VII from the state claim under the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't §§ 20-601 *et seq*. The protections of the Maryland Fair Employment Practices Act are similar in scope to those of Title VII, *see, e.g.*, *Crockett v. SRA Int'l*, 943 F. Supp. 2d 565, 572 (D. Md. 2013), thus the analysis is nearly identical for a claim under either statute. As this Court is denying Defendant's Motion for Summary Judgment with respect to Plaintiff's gender discrimination claim, that claim shall proceed under both Title VII and the Maryland Fair Employment Practices Act.

and II certifications from the State of Maryland.[3]

In 1998, Dr. Downing began her employment with Baltimore City Public Schools ("BCPS") as an administrator of various programs. Pl.'s Compl. ¶ 9. Dr. Downing held several different positions from 1998 through 2008, including principal of Eager Street Academy, manager of a high school reform initiative, and principal of an alternative elementary school. *Id.*; Mem. in Supp. of Def.'s Mot. for Summ. J., at 7-8. In May 2008, the Board chose to reorganize Plaintiff's alternative elementary school into a program run by an assistant principal. Mem. in Supp. of Def.'s Mot. for Summ. J., at 8; Pl.'s Resp. in Opp., 3, ECF No. 56-2. Dr. Downing was given the option to either accept a demotion and remain as an assistant principal, or apply for a new position. *Id.* She rejected the offer to remain at the alternative elementary program as an assistant principal. Mem. in Supp. of Def.'s Mot. for Summ. J., at 9.

From August 2008 through July 2009, Dr. Downing applied for numerous administrative positions within BCPS.[4] *Id.* Although generally qualified for the jobs in question, the Board did not select her for any of the permanent positions. Pl.'s Compl. ¶¶ 12-22; Pl.'s Resp. in Opp., at 3-4. Jonathan Brice ("Brice"), the former Executive Director

---

[3] In Maryland, certified teachers and other licensed professionals with master's degrees may obtain Administrator I and II certifications to become educational leaders and administrators at the local and state levels. *See* Md. State Dep't of Educ., www.marylandpublicschools.org.

[4] These positions included Director of the Office of Student Placement, Director of the New Initiative Office, and Coordinator of Student Placement. Pl.'s Compl. ¶¶ 12, 16, 19; Mem. in Supp. of Def.'s Mot. for Summ. J., at 9-11. Dr. Downing served as the interim Director of the Office of Student Placement, but was not selected as the permanent Director. Mem. in Supp. of Def.'s Mot. for Summ. J., at 10-11. Dr. Downing also applied for the principal position of several schools, such as Baltimore Community High School, Doris M. Johnson High School, Paquin Program School, and Forest Park High School. Pl.'s Compl, ¶¶ 15, 17, 20; Mem. in Supp. of Def.'s Mot for Summ. J., at 10-13.

for Student Support and Safety in BCPS, explained that Dr. Downing was well-educated and experienced, but lacked the creativity and innovation that the Board desired for the positions in question.[5] Mem. in Supp. of Def.'s Mot. for Summ. J., at 13; Pl.'s Resp. in Opp., at 7. Plaintiff, however, claims that the Board instead chose less qualified individuals with no administrative experience. *See* Pl.'s Resp. in Opp., at 5-6.

Although Plaintiff alleges that the Board discriminated against her in every instance in which she was not hired for a particular position, her application for Principal of Forest Park High School is the only fully developed allegation of discrimination. Mem. in Supp. of Def.'s Mot. for Summ. J., at 13-14; Pl.'s Resp. in Opp., at 9-10. After she applied for the principal position, a panel composed of members of the Forest Park community interviewed her and other candidates. Mem. in Supp. of Def.'s Mot. for Summ. J., at 13-14. The community panelists used identical scoring rubrics for each applicant and sent the top candidates to Dr. Andrés Alonso, then Chief Executive Officer of BCPS, for an interview and selection. *Id.* at 14. Dr. Downing fared very well in her community interview, and her score placed her in second position behind another applicant, Jeffrey White ("White").[6] *Id.* Dr. Alonso interviewed the top three candidates for the position, and eventually selected the panelists' top choice, White. *Id.* at 14-15. When White rejected the offer, the Board chose to re-post the position and interview additional candidates. *Id.*

Dr. Downing questioned the decision to re-post, as she remained available as the

---

[5] Brice also wrote Dr. Downing a laudatory reference letter after she was not selected for the permanent position leading the Office of Student Placement. Mem. in Supp. of Def.'s Mot for Summ. J., at 11. In this letter, Brice explained that she had the "opportunity to be a great principal." *Id.*

[6] Dr. Downing tied for second place with another applicant, Daniel Murray. *Id.*

second choice. *Id.*; *see also* Pl.'s Resp. in Opp., at 9-10. She alleges that she heard that one panelist, Rita Fayall, had expressed a preference for a male principal, given the demographics of the student population, during the panel discussions.[7] Mem. in Supp. of Def.'s Mot. for Summ. J., at 16-17. However, the panelist who had allegedly recalled this incident. Rufus Thompson III ("Thompson") testified in deposition that other members of the panel staunchly disagreed, and thus scored the candidates to reflect no preference between men or women. *Id.* at 17. When Dr. Downing approached Roger Shaw ("Shaw"), an executive director who oversaw many BCPS high schools, for an explanation, he told her that the Board wanted someone "different" to tackle the many problems facing Forest Park High School. Mem. in Supp. of Def.'s Mot. for Summ. J., at 15; Pl.'s Resp. in Opp. at 10-11. For example, Shaw pointed to Dr. Downing's lack of experience working with the vast data associated with a large public high school like Forest Park. *Id.* Her career had focused on smaller, alternative programs, in contrast to the particular demands of the traditional Forest Park. Mem. in Supp. of Def.'s Mot. for Summ. J., at 15-16. Plaintiff was free to re-interview for the position during the second round. *Id.* at 17. After some confusion, she chose not to re-interview. *Id.*; *see also* Pl.'s Resp. in Opp., at 13-14.

In the wake of her unsuccessful application for Principal of Forest Park High School, Tisha Edwards, then Chief of Staff to Dr. Alonso, arranged for Dr. Downing to work in the

---

[7] Plaintiff contends that an employee of the Board, Charles Davis, who facilitated the community interviews, testified that a majority of the interview panel preferred a male principal. Pl.'s Resp. in Opp., at 20 (citing Davis Aff., ECF No. 56-26).

Office of Title I Grants.[8] Mem. in Supp. of Def.'s Mot. for Summ. J., at 22. Dr. Downing currently holds this position, for which she receives a salary equal to that of her previous positions. *Id.* at 23.

On April 5, 2012, Dr. Downing filed this Complaint, alleging that the Board unlawfully discriminated against her when it failed to hire her for various administrative and supervisory positions in the Baltimore City Public School system. This Court initially granted Defendant's Partial Motion to Dismiss[9] (ECF No. 7) on the grounds that the Board, as an arm of the State of Maryland, was entitled to sovereign immunity under the Eleventh Amendment of the United States Constitution. Mem. Op., 7, ECF No. 15. Yet, this Court also held that the State had waived its immunity for claims up to $100,000, and thus allowed Plaintiff to file an Amended Complaint wherein she would reduce her damages accordingly. *Id.* at 8-9. Subsequently, Dr. Downing filed the subject Amended Complaint (ECF No. 15) on January 7, 2013.

Towards the end of the discovery period, Dr. Downing filed a Motion for Leave to File a Second Amended Complaint (ECF No. 43). She intended to add retaliation and loss of consortium claims to the existing discrimination claims. This Court denied Dr. Downing's Motion, concluding that (1) she failed to show good cause for filing such a late amendment to her Amended Complaint; and (2) neither the retaliation claim nor the loss of consortium claim were viable as a matter of law. Mem. Order, ECF No. 49. The Board subsequently

---

[8] Although Plaintiff was technically assigned to teach business education at Patterson High School, she never actually taught a class due to Tisha Edwards's intervention. Mem. in Supp. of Def.'s Mot. for Summ. J., at 22.

[9] Defendant sought to dismiss only Count I (ADEA) and Count III (Maryland Fair Employment Practices Act) on grounds of Eleventh Amendment sovereign immunity.

filed the pending Motion for Summary Judgment (ECF No. 51).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*,

190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

ANALYSIS

In moving for summary judgment, Defendant contends that Plaintiff cannot establish a prima facie case as to any of her three discrimination claims, nor has she shown any remaining genuine issues of material fact. Given these alleged deficiencies, the Board asks this Court to enter judgment as a matter of law in its favor. By alleging race, age, and gender discrimination, Dr. Downing essentially argues that the Board "treated [her] less favorably because of her race," age, and gender when it did not select her for the positions in question. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 267 (4th Cir. 2005). While *Anderson* addressed race discrimination, the United State Court of Appeals for the Fourth Circuit has head that the same analysis applies to claims of age and sex discrimination. *See Billingslea v. Astrue*, 502 F. App'x 300 (4th Cir. 2012) (age); *Harris v. Mayor and City Council of Baltimore*, 429 F. App'x 195 (4th Cir. 2011) (sex).

In applying the same analysis to race, age, or gender discrimination, a successful claim of disparate treatment for failure to promote requires a plaintiff to "follow the burden-shift framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Id.* at 268. The plaintiff must first satisfy a prima facie case of discrimination by showing that "(1) she is a member of a protected group; (2) she applied for the position in

question; (3) she was qualified for that position; and (4) defendants rejected her application under circumstances that give rise to an inference of unlawful discrimination." *Id.* (citing *Bryant v. Aiken Reg. Med. Ctrs., Inc.*, 333 F.3d 536, 544-45 (4th Cir. 2003). One the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the decision not to promote the plaintiff to the position in question. *Anderson*, 406 F.3d at 268 (citing *McDonnell Douglas*, 411 U.S. at 804; *Bryant*, 333 F.3d at 545). The plaintiff must rebut the defendant's proffered reasons as mere pretext for intentional discrimination. *Bryant*, 333 F.3d at 545 (citing *Fuller v. Phipps*, 67 F.3d 1137, 1141 (4th Cir. 1995)).

### A. Race Discrimination (Counts II and III)

Although Dr. Downing easily satisfies the first and second elements of a prima facie case, she cannot establish that the Board rejected her under circumstances supporting an inference of racial discrimination. She is an African-American female over the age of fifty years. Yet, even assuming, without addressing, that she satisfies the third prima facie element, Dr. Downing has provided no evidence of racial bias or discrimination. The Board is thus entitled to judgment as a matter of law on the claim of race discrimination under Title VII (Count II).

### B. Age Discrimination (Count I)

Dr. Downing's age claim similarly fails for lack of any evidence of discrimination. To prevail on a claim under the ADEA, a plaintiff must show that age was the "but for" cause

of her injury. *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 176-77 (2009). Dr. Downing's only evidence of age discrimination, however, is various Baltimore City Schools employees explaining to her that they wanted someone "different," or more "creative," or experienced in a particular area. *See, e.g.*, Pl.'s Resp. in Opp., at 7. Plaintiff argues that such explanations masked the Board's desire for someone younger than she. Such reasoning, however, would require this Court to make an unsupported leap between the above comments and Plaintiff's theories. Mere speculation, without any factual support, does not amount to the requisite "but for" causation of a successful ADEA claim. Dr. Downing thus cannot establish a prima facie case of age discrimination, and the Board is entitled to judgment as a matter of law with respect to Count I.

### C. Gender Discrimination (Counts II and III)

Unlike the claims for race and age discrimination, the record reflects genuine issues of material facts with respect to Dr. Downing's gender discrimination claim. First, she has presented sufficient evidence to establish that she was qualified for the position in question – here, Principal of Forest Park High School. Dr. Downing is a highly-educated woman, with several graduate degrees and years of administrative and supervisory experience in the Baltimore City Public School system. Although the Board disputes whether she was qualified to be Principal of Forest Park High School in particular, a reasonable jury could conclude that Dr. Downing was so qualified.

Second, genuine disputes of material fact remain as to the role gender bias played in Dr. Downing's unsuccessful application for the position in question. As previously described, a member of the community panel, Rufus Thompson III, testified in deposition that a fellow member, Rita Fayall, expressed a preference for a male principal, given the demographics of the student population. Even though Thompson explained that the other members of the panel quickly repudiated Fayall's suggestion, Dr. Downing argues that this preference is sufficient to support an inference of unlawful discrimination. A second witness, Charles Davis, confirmed that preference for a male principal was discussed in the meeting of the community panel. Moreover, Davis stated that not just one, but several panel members agreed with the need for a male principal at Forest Park High School. Pl.'s Resp. in Opp., at 20 (citing Davis Aff.). The presence of two witnesses testifying to the alleged gender bias sufficiently supports an inference of discrimination in the circumstances of Dr. Downing's rejection.[10] She has thus established a prima facie case of gender discrimination.

In accordance with the *McDonnell Douglas* framework, the burden now shifts to the Defendant to articulate a legitimate, non-discriminatory reason for its decision not to promote Dr. Downing. The Board contends that, while Dr. Downing was well-educated and possessed administrative experience, she did not have the particular skill set required for the Principal of Forest Park High School. *See, e.g.*, Mem. in Supp. of Def.'s Mot. for Summ. J., at

---

[10] The Board contends that the evidence supporting Dr. Downing's claim – namely, the statements of Thompson and Davis – are inadmissible hearsay, and thus may not be considered at the summary judgment stage. Although the Board is correct that a court may not give any weight to inadmissible hearsay at summary judgment or at trial, *Maryland Highways Contractors Ass'n v. State of Maryland*, 933 F.2d 1246, 1251-52 (4th Cir. 1991), the evidence presented in this case may or may not be hearsay. The resolution of any evidentiary issues must await the trial of this case.

15 (quoting Roger Shaw). According to Roger Shaw, the executive director supervising Forest Park, critical to the success principal of Forest Park was his or her capacity to understand and work with "comprehensive high school, student [achievement] data." *Id.* As Dr. Downing's career largely centered on smaller, alternative programs, the Board argues that she did not have the requisite skill set for a large school with the specific challenges of Forest Park. *Id.* at 15-16.

Yet, the record reflects genuine issues of material fact with respect to the Board's justifications, such that a reasonable jury could find that these explanations are mere pretext. First, Roger Shaw admitted in his deposition that he did not personally know whether Dr. Downing had ever "demonstrated the movement of data," despite its alleged importance as a criterion. Pl.'s Resp. in Opp., at 11 (quoting Shaw Dep. 43-45, ECF No. 56-15). Second, Plaintiff offers evidence that candidates the Board selected for the Forest Park position did not possess the requisite familiarity with student achievement data. *See* Pl.'s Resp. in Opp. Ex. 10, ECF No. 56-16 (resume of Thomas Hill, a principal of Forest Park, whose resume included no reference to his capacity to use the data in question); *see also* Pl.'s Resp. in Opp., at 11 (explaining that Kevin Brooks, another principal of Forest Park, had led only alternative schools before Forest Park). Given this evidence, genuine issues of material fact remain as to the circumstances in which Dr. Downing was not selected to be Principal of Forest Park High School. The Board is thus not entitled to judgment as a matter of law on the claim of gender discrimination.

CONCLUSION

For the reasons stated above, Defendant Baltimore City Board of School Commissioners' Motion for Summary Judgment (ECF No. 51) is GRANTED IN PART and DENIED IN PART. Specifically, summary judgment is granted on Dr. Downing's claims of race and age discrimination, but denied with respect to her claim of gender discrimination. That claim shall proceed to trial under both Title VII and the Maryland Fair Employment Practices Act.

A separate Order follows.

Dated: March 12, 2015                    __/s/_____
                                          Richard D. Bennett
                                          United States District Judge